**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| AMERICAN POWER, LLC, | : | Case No. 3:17-cv-347 |
| | : | Case No. 3:21-cv-321 |
| Plaintiff, | : | |
| | : | |
| vs. | : | CONSOLIDATED |
| | : | |
| DOUGLAS O. HARRIS, *et al.*, | : | District Judge Michael J. Newman |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| Defendants. | : | |
| | : | |
| DEKTRIX, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| vs. | : | |
| | : | |
| ADIL BAGUIROV, *et al.,* | : | |
| | : | |
| Defendants. | : | |

**ORDER**

This matter is currently before the Court upon two motions to compel discovery (Doc. #s 141 and 162)[1] filed by Murray J. Crane, Dektrix LLC, Douglas O. Harris, and Michael T. Morley (collectively, "Dektrix"), the memorandum in opposition to these motions filed by American Power, LLC, Adil Baguirov, and Islom Shakhbandrov (collectively, "the AMP Parties") (Doc. #168), and the reply memorandum in support of the motions to compel filed by Dektrix (Doc. #172).

---

[1] Unless noted otherwise, all docket citations refer to the filings contained in *American Power, LLC v. Douglas O. Harris, et al.*, case no. 3:17cv347.

## I.    BACKGROUND

This discovery dispute arises out of the litigation related to the demise of a shipping company, Dektrix LLC. (Doc. #162, *PageID* #s 2212-13).  According to Dektrix, the principal members of American Power, LLC, Islom Shakhbandarov and Adil Baguirov, purchased 200,000 membership units in Dektrix LLC for $1,000,000 in 2016 with the initial payment due in December 2016 and the second payment due in January 2017. *Id*. at 2213. When Mr. Shakhbandarov and Mr. Baguirov failed to make the second payment in January 2017, the parties agreed to extend the time for payment until March 2017. *Id*.  Ultimately, the full amount of the second payment was never made, which Dektrix alleges resulted in its inability to purchase flat decks to satisfy customer orders and the eventual demise of the company. *Id*.

Mr. Shakhbandarov and Mr. Baguirov, in turn, assigned their claims to their business entity, American Power, LLC, and allege that Dektrix, among others, fraudulently induced their failed investment. *Id*.  According to American Power, LLC, but for their investment in Dektrix, they could have invested in more profitable business opportunities that would have increased the growth and expansion of American Power, LLC. (*Id*.; *see also* Doc. #162-2, *PageID* #2231).

Because of the claims that American Power, LLC has asserted against Dektrix as well as the way it has computed its damages, Dektrix has sought to obtain discovery related to the AMP Parties' financial information. The AMP Parties have resisted producing discovery responsive to several of these requests, leading Dektrix to file the two motions to compel at issue.  For the reasons discussed below, Dektrix's first motion to compel (Doc. #141) is **DENIED AS MOOT**, and Dektrix's second motion to compel (Doc. #162) is **GRANTED IN PART** and **DENIED IN PART**.

## II.    STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide that a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). In evaluating proportionality, the Court must "consider[ ] the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*. Evidence need not be ultimately admissible to be discoverable. *Id*.

When a party fails to respond to respond to discovery requests, Federal Rule of Civil Procedure 37 permits a discovering party to file a motion for an order compelling discovery, provided that the motion to compel includes a certification that the movant has, in good faith, conferred or attempted to confer with the party failing to respond to the requests.  The party moving to compel "bears the burden of demonstrating [the] relevance" of the requested discovery. *CSX Transp., Inc. v. Columbus Downtown Dev. Corp*., No. 2:16-cv-557, 2019 WL 1760069, at *4 (S.D. Ohio Apr. 22, 2019) (citing *Gruenbaum v. Werner Enter., Inc*., 270 F.R.D. 298, 302 (S.D. Ohio 2010)).  If the moving party demonstrates that the requested material is relevant, "the burden shifts to the non-movant to show that to produce the information would be unduly burdensome." *Id*.  In the Sixth Circuit, district courts have generally found that the non-movant must demonstrate with specificity that a discovery request is unduly burdensome or that the discovery sought is not discoverable under the Federal Rules. *See e.g., Kafele v. Javitch, Block, Eisen & Rathbone*, No. 2:03-cv-638, 2005 WL 5095186, at *2 (S.D. Ohio Apr. 20, 2005) (As a general rule, "[a]ll grounds for an objection ... shall be stated with specificity.... The mere statement by a party that an

3

interrogatory or request for production is overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection."); *Kline v. Mortgage Elec. Sec. Sys.,* No. 3:08-cv-408, 2014 WL 4928984, at \*13 (S.D. Ohio Oct. 1, 2014), *on reconsideration in part*, 2014 WL 5460575 (S.D. Ohio Oct. 27, 2014) ("A responding party 'must show' specifically how each discovery request is burdensome and oppressive by submitting affidavits or offering evidence revealing the nature of the burden.'") (*citing In re Heparin Prods. Liab. Litig.*, 273 F.R.D. 399, 411 (N.D. Ohio 2011)) ("where a party claims burdensomeness, it must explain why that is so" and offer alternatives if possible "that could enable some degree of production") (*quoting Kafele*, 2005 WL 5095186, \*2 n. 8).

In this case, the Court is satisfied that the prerequisites to a motion to compel have been met in that Dektrix has attempted to resolve these issues with the AMP Parties in good faith before seeking the Court's intervention.  Accordingly, the Court will address the merits of Dektrix's motions to compel.

## III.    DISCUSSION

In its first motion to compel, Dektrix outlined several discovery disputes and requested that the Court issue an order compelling the AMP Parties to respond to the stated deficiencies. (Doc. #141).  In order to afford the parties an opportunity to informally resolve these issues, the undersigned stayed briefing on this motion. (Notation Order dated Oct. 25, 2022). While the parties were able to resolve some of these issues without Court intervention, several outstanding disputes remained. Accordingly, Dektrix was instructed to file a second motion to compel that identified the remaining disputes.  (Notation Order dated Feb. 3, 2023). As Dektrix has since filed a second motion to compel (Doc. #162) that encompasses all the remaining issues, the first motion to compel (Doc. #141) is hereby **DENIED AS MOOT**.

In the second motion to compel, Dektrix requests that the Court issue an order compelling the AMP Parties to (1) answer Dektrix's Interrogatories Numbers 4 and 5; (2) produce documents responsive to Dektrix's Requests for Production Numbers 2, 3, and 8; and (3) sign and verify their Answers to Interrogatories and sign their Response to Requests for Production. (Doc. #162, *PageID* #2212).  In response, the AMP Parties maintain that they appropriately responded to these requests and that the verification pages were sent on October 27, 2022 and November 14, 2022. (Doc. #168, *PageID* #2564).  In its reply brief, Dektrix continues to challenge the sufficiency of the responses to the interrogatories and requests for production of documents but does not address the AMP Parties' claim that the signed verification pages were produced. (Doc. #172, *PageID* #s 2608-12).  While the AMP Parties reference an email demonstrating their compliance with this production, it is unclear whether the attachments to the referenced email actually contain the signed verification pages. (*See* Doc. #168-1).  Accordingly, to the extent the email did not contain the referenced attachments, the AMP Parties are **COMPELLED** to produce the signed verification pages.

The parties dispute the sufficiency of the responses to the identified interrogatories and requests for production of documents. Broadly speaking, the discovery Dektrix seeks to compel pertains to the financial condition of the AMP Parties during certain time frames. According to Dektrix, the AMP Parties have put their financial condition at issue in at least two ways. (Doc. #162, *PageID* #2214; Doc. #172; *PageID* #s 2608-09).

First, Dektrix claims that the way in which the AMP Parties have calculated their damages opens the door to discovery of their financial condition. *Id*. Specifically, the AMP Parties' expert report calculates damages based on the potential business opportunities that they were unable to pursue as a result of their failed investment and loan to Dektrix.  *Id*. As such, Dektrix claims that

it should be able to investigate what, if any, other business opportunities the AMP Parties actually pursued. *Id.* Dektrix's argument is well taken. While the AMP Parties argue that their inability to use these funds is the basis of the damages' calculation and would be true regardless of whether they had additional funds to invest, this argument ignores the fact that the AMP Parties are not calculating their damages solely on the amount of their lost investment but on the potential profits derived therefrom. By putting their financial condition at issue in this way, the AMP Parties have opened the door to Dektrix inquiring into the status of the AMP Parties' assets and liabilities and how/if they chose to invest their available funds.

Second, Dektrix contends that the AMP Parties' financial condition is relevant to whether the AMP Parties knew when they initially entered into the agreement with Dektrix that they were or would be unable to perform on their agreement to pay the second investment to Dektrix. (Doc. #162, *PageID* #2214; Doc. #172; *PageID* #s 2608-09). Here, Dektrix argues that, if the AMP Parties knew that they were not able to make the second investment to Dektrix, a jury could infer that the AMP Parties are using their allegations of misconduct and fraud against Dektrix as a pretext for their own inability or unwillingness to perform. *Id.* In response, the AMP Parties argue that their ability or willingness to pay the second investment is irrelevant because they do not dispute that they did not make the second investment. (Doc. #168, *PageID* #2565). This argument, however, ignores the fact that Dektrix intends to use the financial information requested not as evidence of breach but, rather, as a potential defense to the AMP Parties' own claims of misconduct and fraud against Dektrix. At this stage in the litigation, it is premature to determine the merits of this alleged defense. Instead, the Court finds that Dektrix has sufficiently set forth facts demonstrating that the information sought is relevant to its assertions of this potential defense.

Accordingly, to the extent that the AMP Parties object to the general relevance of discovery related to the financial condition of American Power, LLC, Mr. Shakhbandarov, and Mr. Baguirov, their objections are overruled. Dektrix has set forth sufficient reasons as to why this financial information is relevant to their defenses in this case. However, to the extent that the AMP Parties object to the scope of the requests based on an overly broad time frame, the objection is sustained. Several of the requests at issue seek information dating back to 2014 without any explanation as to why such information is relevant to Dektrix's defenses. In fact, it appears that Mr. Shakhbandarov and Mr. Baguirov were not even involved with Dektrix until June 2016. (*See Dektrix LLC v. Adil Baguirov*, *et al.*, case no. 3:21cv21, Doc. #1, *PageID #*5). Thus, in the absence of information showing the specific relevance of financial information predating June 2016, production of documents responsive to Dektrix's requests should be dated June 2016 or later.

Finally, to the extent that the AMP Parties broadly object to the production of financial information related to Mr. Shakhbandarov and Mr. Baguirov on the basis that such information is "personal and confidential in nature," their objection is overruled. Like American Power, LLC, Mr. Shakhbandarov and Mr. Baguirov are counter-defendants in this litigation who have put their financial condition at issue. The fact that they are individuals as opposed to a business entity is immaterial as to whether their financial information is discoverable. Further, their concerns regarding any unnecessary public dissemination of their personal information can be accounted for by producing such information pursuant to the Stipulated Protective Order (Doc. #17), which was entered in this case on March 30, 2022. Having set forth these generally applicable standards, the undersigned will now turn to the specific discovery disputes at issue.

*Interrogatories Number 4*

Interrogatory Number 4 asks the following of the AMP Parties:

> Describe the financial condition of AMP, Shakhbandarov and/or Baguirov between August 2016 and May 2017. This request can be satisfied by [] providing a detailed description of the assets and liabilities of each on the following dates: August 5, 2016[;] December 5, 2016[;] January 15, 2017; January 31, 2017; February 28, 2017[;] March 31, 2017[;] April 30, 2017[;] and May 31, 2017.

(Doc. #162-4, *PageID* #2245).

The AMP Parties provided the following answer to Interrogatory Number 4:

> ANSWER: AMP, Shakhbandarov, and Baguirov object to this Interrogatory on the basis that it is not relevant to any claim or defense in this case, and that the burden of producing the information (which is personal and confidential in nature) is not proportional to the needs of the case, especially with regard to the personal financial information of Shakhbandarov and Baguirov.
>
> Subject to and without waiving said objections, AMP has already produced year-end profit and loss statements and year-end balance sheets for 2016-2020 as Exhibit 5 to the Damages Study prepared by Flagel Huber Flagel.
>
> In addition, see attached appraisals of the real estate and buildings located at 1819 Troy Street in Dayton, Ohio, which are dated as of May 2019, showing the real estate had a total market value of $1,065,000, which was available to be used as collateral for a loan (AMP does not have appraisals for prior years). Although the real estate is one parcel, there are two separate appraisals because there are two main buildings located on the parcel. This is the property that AMP uses for its business (though it is owned by an affiliated limited liability company for legal, tax, and accounting purposes). In addition, Shakhbandarov and Baguirov had other real estate holdings and interests in other entities, the aggregate value of which was in excess of the additional investment option amounts, and would have allowed them to make the optional investments and/or could have served as collateral for a loan to make the optional investments.

(Doc. #162-4, *PageID* #2245).

As previously noted, Dektrix's discovery requests related to the financial condition of the AMP Parties fall within the ambit of discovery authorized by Fed. R. Civ. P. 26(b). Accordingly, the AMP Parties bear the burden of demonstrating why this interrogatory is unduly burdensome and not proportional to the needs of the case. *CSX Transp., Inc*, 2019 WL 1760069, at *4. The AMP Parties boilerplate objections that Interrogatory Number 4 is overly burdensome and not proportional to the needs of the case are simply insufficient to relieve them from their obligation

of responding to an otherwise legitimate discovery request. *See Kafele*, 2005 WL 5095186, at *2 (As a general rule, "[a]ll grounds for an objection ... shall be stated with specificity.... The mere statement by a party that an interrogatory or request for production is overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection.").

Notwithstanding the foregoing, the AMP Parties' argument in their memorandum in opposition regarding the burden and expense required by Interrogatory Number 4 is well taken. Specifically, the AMP Parties contend that the burden and expense of obtaining an exhaustive list of the assets and liabilities of two individuals and one entity for eight separate dates—when such information is not of the kind that the parties would regularly maintain—is not proportional to the needs of the case. (Doc. #168, *PageID* #2568). While Dektrix maintains that the eight dates requested reflect "key dates" that correspond to certain meetings or promises made by Mr. Shakhbandarov and Mr. Baguirov, Dektrix has not demonstrated the need for such detailed information on these key dates so as to overcome the burden and expense of obtaining such information.  Instead, the information that the AMP Parties did provide, including the year-end profit and loss statements for 2016 through 2020, the year-end balance sheets for 2016 through 2020, and the May 2019 real estate appraisals appear to adequately address Interrogatory Number 4 as it pertains to American Power, LLC. With that being said, there does appear to be some disagreement as to whether these documents were provided as stated in the answer to Interrogatory Number 4.  As such, the AMP Parties are **COMPELLED** to supplement their response to Interrogatory Number 4 to provide the Bates numbers for the documents referenced as being produced in their answer.

Finally, the AMP Parties' answer to Interrogatory Number 4 is not sufficient as it pertains to Mr. Shakhbandarov and Mr. Baguirov.  Unlike the information provided on behalf of American

Power, LLC, the answer to Interrogatory Number 4 only provides a generic reference to the assets held by Mr. Shakhbandarov and Mr. Baguirov and provides no mention of liabilities. Such a response is inadequate to address the otherwise relevant information sought by Interrogatory Number 4. As such, the AMP Parties are **COMPELLED** to supplement their response to Interrogatory Number 4 by providing a detailed description of the assets and liabilities held by each Mr. Shakhbandarov and Mr. Baguirov during the timeframe of August 2016 and May 2017.

*Interrogatory Number 5*

In Interrogatory Number 5, the Dektrix Parties ask the AMP Parties to "[d]escribe every fact that shows, or would support an inference that, on December 5, 2016, You were, or expected to be, able to pay $650,000.00 to Dektrix by January 15, 2017 or that on January 31, 2017 You were, or expected to be, able to pay $850,000.00 to Dektrix by March 1, 2017."[2]
(Doc. #162-4, *PageID* #2246).

> In response, the AMP Parties provided the following answer to Interrogatory Number 5:

> ANSWER: Objection. This interrogatory seeks personal and confidential information that is not relevant nor proportional to the needs of the case. In addition, the request is overly burdensome and overbroad, as it requests "every fact."

> Notwithstanding these objections, AMP and its members had assets available to them that would have enabled them [to] exercise their option to invest these additional sums into Dektrix, including the ability to use the real estate located at 1819 Troy Street as collateral for a loan, as well as other equipment, assets, and funds available to AMP and its members. AMP's unwillingness to make any further monetary transfers to Dektrix was not related to AMP's ability (or lack thereof) to obtain the funds to invest; rather, AMP elected not to exercise its options to purchase any additional membership units, due to concerns it developed after witnessing significant mismanagement by Dektrix. The payments referenced in Interrogatory Number 5 were optional additional investments that AMP was entitled to make, but was not obligated to make under the parties' written agreements. Additionally, see response to Interrogatory Number 4 above.

(Doc. #162-4, *PageID* #2246).

---

[2] The Interrogatories define "You" in the request to mean "American Power, LLC, its members, managers and any person acting on its behalf." (Doc. #141-9, *PageID* #1913).

The AMP Parties' objections to Interrogatory Number 5 are insufficient to avoid their obligation of providing a complete response. Again, the financial information sought by Interrogatory Number 5 is relevant to Dektrix's defenses in this litigation, and the fact that the financial information of Mr. Shakhbandarov and Mr. Baguirov is personal and confidential is not an appropriate basis for withholding such relevant information. Additionally, the AMP Parties' statement that Interrogatory Number 5 is not proportional to the needs of the case, without any explanation as to why the request is not proportional, is inadequate to state a successful objection. *See Kafele*, 2005 WL 5095186, at *2.

Nonetheless, the answer provided by the AMP Parties does set forth several facts that purport to support their position that they had the assets available to make the second investment. The response also reiterates the AMP Parties' position that the decision to not make a second investment was made without regard to the availability of funds. Thus, despite their improper objections, the AMP Parties appear to have provided a satisfactory response to Interrogatory Number 5. Accordingly, any additional facts or clarifications that Dektrix seeks to obtain from the AMP Parties on this issue are better suited for a deposition.

In short, to the extent that the AMP Parties withheld responsive facts to Interrogatory Number 5 on the basis that the information is personal and confidential or not proportional to the needs of the case, the AMP Parties are **COMPELLED** to supplement their response with such information. If no such information was withheld, the AMP Parties must clarify to Dektrix that they did not withhold any such facts on the basis of these objections.

*Requests for Production Number 2*

Dektrix also seeks to compel the AMP Parties to respond to three of its requests for production of documents. In particular, Dektrix seeks to compel a response to its Request for

11

Production Number 2, which asks for "[a]ny and all financial records for AMP including monthly balance sheets, profit and loss statements and tax returns from 2014 through 2017."[3] (Doc. #141-9, *PageID* #1914). In response, the AMP Parties provided the following answer to Request for Production Number 2:

> RESPONSE: Objection. This request is vague because "financial records" is undefined and could mean many different things. In its broadest interpretation, this request is overbroad and unduly burdensome. Notwithstanding these objections, AMP will produce non-privileged, responsive documents for American Power LLC.

(Doc. #162-3, *PageID* #2236).

As noted previously, the Court has already determined that the AMP Parties have put their financial condition at issue and, therefore, the request for financial records is, in fact, relevant. As for the AMP Parties' objection that the reference to "financial records" is vague and undefined, the undersigned agrees that Dektrix's failure to define the term makes the scope of the request unclear; however, the request itself provides that "financial records" were meant to include at least "monthly balance sheets, profit and loss statements and tax returns[.]" (Doc. #141-9, *PageID* #1914). Therefore, the AMP Parties' failure to provide any such responsive documents (such as, monthly balance sheets, profit and loss statements, and tax returns) on the basis that Dektrix did not exhaustively define "financial records" is without merit.

Further, the AMP Parties' statement that it "will produce non-privileged, responsive documents for American Power LLC" fails to properly identify which documents are being withheld on the basis of their objections versus which documents are being produced. Rule 34(b)(2)(B) of the Federal Rules of Civil Procedure provides that "[f]or each item or category, the response must either state that inspection and related activities will be permitted as requested or

---

[3] The Request for Production of Documents define "AMP" in the request to mean "American Power, LLC, its members, managers and any person acting on its behalf." (Doc. #141-9, *PageID* #1913).

state with specificity the grounds for objecting to the request including the reasons." The obligation to provide specificity when asserting an objection is further elaborated in the commentary to Rule 34, which states:

> Rule 34(b)(2)(B) is amended to require that objections to Rule 34 requests be stated with specificity. This provision adopts the language of Rule 33(b)(4), eliminating any doubt that less specific objections might be suitable under Rule 34. The specificity of the objection ties to the new provision in Rule 34(b)(2)(C) directing that an objection must state whether any responsive materials are being withheld on the basis of the objection. An objection may state that a request is overbroad, but if the objection recognized that some part of the request is appropriate the objection should state the scope that is not overbroad. Examples would be a statement that the responding party will limit the search to documents or electronically stored information created within a given period of time prior to the events in suit, or to specified sources. When there is such an objection, the statement of what has been withheld can properly identify as matters 'withheld' anything beyond the scope of the search specified in the objection.

Fed. R. Civ. P. 34, Commentary to 2015 Amendment.

In this case, the AMP Parties appear to acknowledge that a portion of this request is relevant by stating that they will produce non-privileged, responsive documents for American Power, LLC. However, the response fails to provide sufficient information to identify which documents are being withheld on the basis of the stated objection. Further, by only referencing American Power, LLC, this response seems to imply that responsive documents from Mr. Shakhbandarov and Mr. Baguirov are being withheld. The AMP Parties have not asserted a valid objection for withholding documents on the basis that they are from Mr. Shakhbandarov and Mr. Baguirov as opposed to American Power, LLC.

Thus, to the extent that they are withholding documents, the AMP Parties are **COMPELLED** to supplement their response to Request for Production Number 2 by (1) specifying what has been withheld versus what has been produced and (2) producing any documents for which a valid objection has not been raised.

*Requests for Production Number 3*

In Dektrix's Request for Production Number 3, the AMP Parties were asked to produce "[a]ny and all bank and credit card statements for AMP from 2014 through the date of response or supplemental response." (Doc. #141-9, *PageID* #1914). In response, the AMP Parties provided:

> RESPONSE: Objection. This request is overbroad and unduly burdensome. It requests financial information that is duplicative of the information contained in AMP's tax returns, its profit and loss statements, and its balance sheets. Therefore, AMP will not produce documents in response to this request.

(Doc. #162-3, *PageID* #2236).

Once again, Dektrix has already carried its burden in demonstrating the relevance of the AMP Parties' financial information dating back to June 2016. Therefore, the burden shifts to the AMP Parties to specifically articulate why this request is objectionable and to offer possible alternatives to enable some degree of production. Here, the AMP Parties' bare assertions that the request is overbroad, unduly burdensome, and duplicative is insufficient to relieve them of their obligation to respond to this otherwise valid request. Further, while the AMP Parties complain that the Request for Production Number 3 is duplicative of the information contained in the tax returns, profit and loss statements, and balance sheets produced, Dektrix alleges that it has not even received the tax returns. (*See* Doc. #172, *PageID* #2610). Additionally, as with the other requests, to the extent that the AMP Parties are withholding documents from Mr. Shakhbandarov and Mr. Baguirov, they have not asserted a valid objection to do so.

Accordingly, to the extent that they are withholding documents, the AMP Parties are **COMPELLED** to supplement their response to Request for Production Number 3 by (1) specifying what has been withheld versus what has been produced and (2) producing any documents for which a valid objection has not been raised.

*Requests for Production Number 8*

Finally, in Dektrix's Request for Production Number 8, the AMP Parties were asked for

the following:

> Any and all Documents related to loans made to, or loans applied for by, AMP or
> its members between June 2016 and October 2017. This request includes but is not
> limited to Documents related to efforts to obtain a loan between August 5, 2016
> and December 5, 2016; any loan from which AMP or its members funded any
> money to Dektrix; and any loan documents purporting to use equipment (e.g.
> forklift) as collateral. Please include communications between any AMP
> representative and any lender/financing institution or its representative;
> applications for loans/financing; approvals or denials; underwriting documents;
> credit scores; documents (*e.g.* check or wire transfer receipts) reflecting funding on
> any loan/financing.

(Doc. #141-9, *PageID* #s 1914-15).

> As their response to Request for Production Number 8, the AMP Parties provided:

> RESPONSE: Objection. This request is overbroad and unduly burdensome.
> Notwithstanding these objections, AMP will produce nonprivileged, responsive
> documents. AMP did not obtain or formally apply for any loans during the time
> period of June 2016 and October 2017, but did make inquiries with multiple
> lenders.

(Doc. #162-3, *PageID* #2236).

The scope of this request also falls within the ambit of Fed. R. Civ. P. 26(b). The AMP

Parties appear to recognize this relevance by stating that they will produce non-privileged,

responsive documents. Despite this acknowledgement, the AMP Parties fail to explain how the

request is overbroad and unduly burdensome and to articulate which documents are being withheld

versus being produced.

In their memorandum in opposition, the AMP Parties further explain that they never

applied for any loans but did provide Dektrix with the names of the lenders they communicated

with informally regarding the possibility of obtaining loans. The AMP Parties do not address,

however, whether there is any of documentation evincing these communications. Thus, to the

15

extent that there is such documentation, the AMP Parties must produce it as responsive to Request for Production Number 8.

Additionally, in response to Dektrix's claims that they have not produced documentation regarding a leased forklift, the AMP Parties explain that the forklift was financed pursuant to a lease and not a loan. As such, information pertaining to the leased forklift is not responsive to Request for Production Number 8, and the AMP Parties have adequately addressed why it was not produced.

However, the AMP Parties have failed to demonstrate why loans taken out by Mr. Shakhbandarov and Mr. Baguirov are not relevant. As discussed above, Mr. Shakhbandarov and Mr. Baguirov have put their financial condition at issue in this case just as American Power, LLC has. The fact that they are individuals as opposed to a business entity is not a valid reason for withholding otherwise relevant information. Dektrix has reasonably limited the scope of this request to loans made or applied for during June 2016 and October 2017. Thus, absent a valid objection explaining why this documentation should be withheld, such responsive information is relevant and should be produced.

Accordingly, to the extent that they are withholding documents, the AMP Parties are **COMPELLED** to supplement their response to Request for Production Number 8 by (1) specifying what has been withheld versus what has been produced and (2) producing any documents for which a valid objection has not been raised.

Based on the foregoing, Dektrix's second motion to compel discovery (Doc. #162) is **GRANTED IN PART** and **DENIED IN PART**. The AMP Parties are **COMPELLED** to produce the discovery outlined above **WITHIN 7 DAYS** of this Order.

16

**IT IS THEREFORE ORDERED THAT:**

1.   Dektrix's Motion to Compel Discovery (Doc. #141) is **DENIED AS MOOT**;

2.   Dektrix's Motion to Compel Discovery from American Power, LLC, Adil Baguirov and Islom Shakhbandarov (Doc. #162) is **GRANTED IN PART** and **DENIED IN PART**; and

3.   The AMP Parties are **COMPELLED** to produce the discovery outlined above **WITHIN 7 DAYS** of this Order.


June 27, 2023                                          *s/Peter B. Silvain, Jr.*
                                                         Peter B. Silvain, Jr.
                                                         United States Magistrate Judge