# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| AMERICAN POWER, LLC, | : | Case No. 3:17-cv-347 |
| | : | Case No. 3:21-cv-321 |
| Plaintiff, | : | |
| | : | CONSOLIDATED |
| vs. | : | |
| | : | District Judge Michael J. Newman |
| DOUGLAS O. HARRIS, *et al.*, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | |
| Defendants. | : | |
| | : | |
| DEKTRIX, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| vs. | : | |
| | : | |
| ADIL BAGUIROV, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## AMENDED REPORT AND RECOMMENDATION[1]

This matter is currently before the Court upon the Motion for Sanctions filed by Plaintiff American Power, LLC ("AMP") (Doc. #201),[2] the Response filed by Douglas O. Harris, Murray J. Crane, Michael T. Morley, Dektrix LLC, Dektrix Transportation Services LLC, and Dektrix Intermodal LLC (collectively, "Dektrix Defendants") (Doc. #206), and the Reply in Support filed by Plaintiff (Doc. #214).

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendation.
[2] Unless noted otherwise, all docket citations refer to the filings contained in *American Power, LLC v. Douglas O. Harris, et al.*, case no. 3:17cv347.

On June 28, 2024, District Judge Michael J. Newman referred Plaintiff's Motion to the undersigned for the limited purpose of reviewing the merits of the motion and holding an evidentiary hearing, if appropriate. (Doc. #236).

## I. BACKGROUND

The remaining Defendants in this case are: Dektrix, LLC; Dektrix Transportation Services, LLC; Dektrix Intermodal, LLC; Douglas Harris; Murray Crane; and Michael Morley (collectively the "Dektrix Defendants"). In its amended complaint, AMP alleges: (1) violations of Section 10(b) of the Exchange Act and Rule 10(b)(5) promulgated thereunder; (2) violations of Section 20(a) of the Exchange Act; (3) violations of Section 15 of the Securities Act; (4) common law fraud; (5) breach of fiduciary duty; and (6) unjust enrichment. (Doc. #76, *PageID* #s 988-98). Dektrix, LLC has also filed a crossclaim against AMP and its principals, Adil Baguirov and Islom Shakhbandarov, alleging breach of contract. *See* Case No. 3:21-cv-21, Doc. #1.[3]

As relevant here, in May 2021, Plaintiff served the Dektrix Defendants with Requests for Production of Documents. (Doc. #201, *PageID* #2793). On September 15, 2021, Defendant Harris provided narrative responses to Plaintiff's Requests as well as a production set marked DEK_000001 to DEK_033356. *Id.*; (Doc. #201-1). The remaining Dektrix Defendants responded by incorporating by reference the objections and responses of Defendant Harris. (Doc. #201, *PageID* #2793); (Doc. #201-2).

Plaintiff asserts that requests 8 and 30 are relevant to the Motion presently before the Court:

> **8. Please produce any and all documents, correspondence, emails, financial statements, memoranda, or any other document in your possession that shows the allocation of investor funds and how those funds were used.**

---

[3] A thorough and complete recitation of the underlying facts of this case was included in the Court's previous Order and Entry regarding the Report and Recommendation of United States Magistrate Judge Sharon L. Ovington (Doc. #43) and is hereby incorporated by reference. *See* Doc. #71, *PageID* #s 882-97.

>**OBJECTION:** Disproportional. Dektrix maintained its financial records in Quickbooks but no longer has access to the program to produce these records. Dektrix has the back-up file and will work with Plaintiff to make it available for inspection upon reasonable notice and terms. The production of this information is not proportional to the needs of the case and is being withheld on that basis.
>**RESPONSE:** Pursuant to Rule 34(b)(2)(E)(i) Dektrix Defendants are producing herewith all responsive documents as they are kept in the usual course of business rather than organizing and labeling them to correspond to the categories in the request.
>
>…
>
>**30. Please produce a copy of all balance sheets, accounts payable, debts, liabilities, and financial projections of the Dektrix Defendants from December 1, 2014 to present. This includes but is not limited to revenue, cash flow, assets, conditions of operations, operating expenses, and costs.**
>**OBJECTION:** Production of all financial records through the present is disproportional to the case. There is no duty to create documents responsive to a request for production.
>**RESPONSE**: Pursuant to Rule 34(b)(2)(E)(i) Dektrix Defendants are producing herewith all responsive documents as they are kept in the usual course of business rather than organizing and labeling them to correspond to the categories in the request.

(Doc. #201-1, *PageID* #s 2808, 2814); (Doc. #201, *PageID* #s 2793-94).

Almost two years later, on September 5, 2023, Plaintiff's counsel sent the Dektrix Defendants' counsel a letter regarding their responses to Plaintiff's Requests for Production of Documents. (Doc. #201, *PageID* #2794); (Doc. #201-3). In the letter, Plaintiff's counsel asserted that the Dektrix Defendants produced "very little in the way of documents that pertain to Dektrix's finances" and requested the QuickBooks backup file referenced in their response; Dektrix's general ledger, financial statements, tax returns, and bank statements from 2014 to present; any documents detailing owner and individual Defendant's compensation from 2014 to present; and monthly bank statements for all accounts held by each of the Dektrix Defendants from 2014 to 2018. (Doc. #201-3).

3

On October 2, 2023, the Dektrix Defendants provided the QuickBooks file (although due to some difficulty obtaining the password, Plaintiff was not able to open the file until October 9, 2023). (Doc. #201, *PageID* #2795). On October 3, 2023, the Dektrix Defendants produced a redacted copy of Dektrix, LLC's 2015 tax return and indicated that Dektrix, LLC did not file tax returns in 2016 and 2017. *Id.*

According to Plaintiff, the Dektrix Defendants' production of financial records included "sixteen (16) PDF's of various reports, including an employee list, vendor list, customer list, and various annual summaries …." *Id.* at 2796. The production also contained a "general ledger purporting to show all credit and debits to the company's bank account, which was in the format of an Excel spreadsheet." *Id.*

## II. STANDARD OF REVIEW

Generally, a party seeking sanctions for spoliation of evidence is required to establish:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010) (citing *Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 107 (2d Cir. 2002)). "The party seeking the sanction bears the burden of proof in establishing these facts." *Byrd v. Alpha All. Ins. Corp.*, 518 F. App'x 380, 383 (6th Cir. 2013).

However, when that evidence is electronically stored information (ESI), Fed. R. Civ. P. 37(e) provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

4

> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the *intent* to deprive another party of the information's use in the litigation may:
> > (A) presume that the lost information was unfavorable to the party;
> > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> > (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

### III. DISCUSSION

Plaintiff asserts that the Dektrix Defendants failed to produce (1) accounting records for Neuvante Solutions, LLC, Dektrix, Inc., and Dektrix Transportation Services, LLC; (2) Defendant Dektrix, LLC's bank account statements; (3) Defendant Dektrix, LLC's 2016 and 2017 tax returns; (4) personal tax returns from Defendants Morley, Harris, and Crane; and (5) tax returns from Neuvante, Dektrix, Inc., and Dektrix Transportation Services, LLC. (Doc. #201, *PageID* #2798).

According to Plaintiff, it requested these documents to establish "the allocation of investor funds and how those funds were used.'" *Id.* at 2795. Plaintiff argues that although the Dektrix Defendants produced a general ledger purporting to show all credits and debits to Dektrix, LLC's bank account, "a spreadsheet is not a source document, because any entries or amounts could be listed, regardless of whether or not the credit or debit actually occurred." *Id.* at 2796. Nevertheless, Plaintiff contends that, assuming the general ledger is accurate, it shows that "Dektrix [] used [Plaintiff's] investment to exclusively benefit Harris, Morley, and Crane, allowing them to minimize their personal losses at the expense of [Plaintiff]." *Id.* at 2797.

The Dektrix Defendants assert that Plaintiff has mischaracterized Defendant Dektrix, LLC's accounting records, maintaining that the records show that "Dektrix spent AMP's investments according to the sound business judgment of Dektrix LLC management and in

5

accordance with the spending plan explained to AMP principals at the time of their investment." (Doc. #206, *PageID* #3083).

    A.    **Accounting Records and Tax Returns**

Although the primary focus of Plaintiff's Motion is on the Dektrix Defendants' failure to produce bank statements, Plaintiff also contends that the Dektrix Defendants failed to produce accounting records and tax returns for Neuvante Solutions, LLC, Dektrix, Inc., and Dektrix Transportation Services, LLC. (Doc. #201, *PageID* #2798). Plaintiff further asserts that the Dektrix Defendants failed to produce the personal tax returns for Defendants Morley, Harris, and Crane. *Id.* The Court will address each in turn. To the extent that Plaintiff seeks sanctions for spoliation of these records, the undersigned finds that sanctions are not warranted for the reasons set forth below.

    *i.*    *Neuvante Solutions, LLC –Accounting Records and Tax Returns*

Plaintiff indicates that Neuvante Solutions, LLC ("Neuvante") is Defendant Harris' "wholly owned entity." (Doc. #201, *PageID* #2796). According to Plaintiff, Dektrix, LLC's general ledger shows that it paid $18,000 to Neuvante between December 2016 and January 2017. *Id.* at 2796-97; (Doc. #201-5).

However, Neuvante Solutions, LLC is not a party to this case, and Plaintiff did not request Neuvante Solutions, LLC's accounting records in its May 2021 Requests or September 2023 letter. Accordingly, the Dektrix Defendants had no obligation to produce Neuvante Solutions, LLC's accounting records or tax returns.

    *ii.*    *Dektrix, Inc. –Accounting Records and Tax Returns*

Plaintiff notes that Dektrix, LLC's general ledger also shows that it paid $21,500 to Dektrix, Inc. between December 2016 and January 2017. (Doc. #201, *PageID* #s 2796-97); (Doc.

6

#201-5). However, there is a dispute between the parties about the identity of Dektrix, Inc. According to Plaintiff, Dektrix, Inc. is the parent company of Dektrix, LLC. (Doc. #201, *PageID* #2796). In contrast, the Dektrix Defendants contend that Plaintiff's assertion is "baseless and false." (Doc. #206, *PageID* #3084 n. 1). Instead, they point to the Declaration of Defendant Harris, who stated, "To the best of [his] recollection and belief, Dektrix, Inc. was the internal name used in Dektrix LLC's QuickBooks accounts to record payments to Dektrix's Canadian employees/contractors including Murray Crane and others through Crane's Canadian company." *Id.*; (Doc. #206-2, *PageID* #3096). According to Mr. Harris, payments to Dektrix, Inc. were for payroll and contract workers. *Id.*

Plaintiff presents no evidence to refute Mr. Harris' statement. As a part of Dektrix, LLC, Dektrix, Inc.'s accounting records and tax returns would be the same as those for Dektrix, LLC.

Moreover, although Plaintiff provides no support for its assertion that Dektrix, Inc. is the parent company of Dektrix, LLC, even if Plaintiff is correct, then Dektrix, Inc. is not a party to this case, and Plaintiff did not request its accounting records or tax returns in Plaintiff's May 2021 Requests or September 2023 letter. Therefore, the Dektrix Defendants had no obligation to provide its records or tax returns. Accordingly, Plaintiff's request for sanctions regarding these records lacks merit.

        iii.     *Dektrix Transportation Services, LLC –Accounting Records*

Contrary to Plaintiff's assertion that it did not receive the records, the Dektrix Defendants assert that they produced the QuickBooks accounting records for Defendant Dektrix Transportation Services, LLC, on October 9, 2023. (Doc. #206, *PageID* #3083). Plaintiff does not indicate what other accounting records it seeks from Defendant Dektrix Transportation Services, LLC. Accordingly, Plaintiff's request for sanctions regarding these records lacks merit.

7

     *iv.*  *Defendants Dektrix Transportation Services, LLC, Morley, Harris, and Crane –Tax Returns*

  The Dektrix Defendants do not specifically address Plaintiff's argument concerning Defendants Dektrix Transportation Services, LLC, Morley, Harris, and Crane's tax records. However, in discussing Defendant Dektrix, LLC's tax returns, they assert that Plaintiff did not specifically request tax returns in its Requests for Production under Fed. R. Civ. P. 34.

  Indeed, a review of the two requests (numbers 8 and 30) that Plaintiff points to as relevant to this Motion reveals that Plaintiff did not specifically request tax returns in its Requests for Production of Documents.  In Request 8, Plaintiff asked for "any and all documents, correspondence, emails, financial statements, memoranda, or any other document in your possession that shows the allocation of investor funds and how those funds were used." (Doc. #201-1, *PageID* #2808).  In Request 30, Plaintiff requests "a copy of all balance sheets, accounts payable, debts, liabilities, and financial projections of the Dektrix Defendants from December 1, 2014 to present. This includes but is not limited to revenue, cash flow, assets, conditions of operations, operating expenses, and costs."  (Doc. #201-1, *PageID* #2814).  Neither of these requests specifically request Defendants' tax returns.

  As Plaintiff correctly points out, its counsel did specifically request these in the September 5, 2023 letter.  (Doc. #201-3).  Notably, however, Plaintiff's counsel did not send the letter until nearly two years after the Dektrix Defendants responded to Plaintiff's Requests.  Moreover, Plaintiff's letter was merely an informal request.  *See Dowling v. Cleveland Clinic Found.,* 593 F.3d 472, 480 (6th Cir. 2010) ("While the [plaintiffs'] counsel should be applauded for beginning discovery requests informally, he was dilatory in failing to make formal discovery requests when informal requests proved unavailing.").  If Plaintiff was not satisfied with the Dektrix Defendants' response to its letter, Plaintiff could have either served the Dektrix Defendants with another request

8

for production of documents—specifically requesting the tax returns—or filed a motion to compel with the Court. Plaintiff did not. Instead, Plaintiff chose to wait until after the close of discovery to file the instant motion. Given Plaintiff's decision not to move to compel production of such tax returns, Defendants' failure to produce such returns is not sanctionable. *See Gambrell v. General Motors, LLC*, No. 21-11846, 2022 WL 17253882, at *5 (E.D. Mich. Nov. 28, 2022) ("Plaintiffs declined to move to compel production of the indemnity agreement, so Defendants' failure to produce is not sanctionable on these facts.")

Furthermore, Plaintiff has not shown that these Defendants Dektrix Transportation Services, LLC, Morley, Harris, and Crane's tax returns were destroyed. *See NLRB v. Bannum, Inc.*, 93 F.4th 973, 983 (6th Cir. 2024) (citing *Nationwide Mut. Fire Ins. Co. v. Ford Motor Co.*, 174 F.3d 801, 804-05 (6th Cir. 1999)) ("Implicit in spoliation is the requirement that the evidence be actually lost or destroyed."); *Applebaum v. Target Corp.*, 831 F.3d 740, 745 (6th Cir. 2016) (citing *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553-54 (6th Cir. 2010)) ("[Plaintiff] has offered no evidence that some of these records even existed, much less that [Defendant] had control over them and destroyed them with a culpable state of mind, as she must to justify a spoliation instruction."). Accordingly, Plaintiff's request for sanctions for spoliation of these records lacks merit.

   v. *Defendant Dektrix, LLC's 2016 and 2017 Tax Returns*

Plaintiff asserts that Defendant Dektrix, LLC failed to produce its 2016 and 2017 tax returns. (Doc. #201, *PageID* #2798). The Dektrix Defendants contend that Dektrix, LLC "produced the only tax return it ever filed"—its 2015 tax return. (Doc. #206, *PageID* #3085). In support, they attached the Declaration of Defendant Harris. (Doc. #206-2). According to

9

Defendant Harris, "The only tax return Dektrix LLC ever had prepared was for 2015. Dektrix was long out of business before any subsequent returns were due." *Id.* at 3097.

Plaintiff has not produced any evidence that shows or even suggests that the 2016 and 2017 tax returns existed. Defendant Dektrix, LLC was not obligated to produce tax returns that do not exist. *See Damsi v. Tarpstop, LLC*, No. 3:21-CV-0953, 2023 WL 9186657, at *10 (N.D. Ohio Oct. 19, 2023) (quoting *Solorzano v. Shell Chem. Co.*, No. Civ. A.99-2831, 2000 WL 1145766, at *7 (E.D. La. Aug. 14, 2000)) ("[C]ase law directs that where a party has unequivocally stated it does not possess requested documents, a court should not compel a further response. This is because a party 'cannot produce what it does not have.'"). Therefore, Plaintiff's request for sanctions regarding these tax returns lacks merit.

**B.    Defendant Dektrix, LLC's Bank Account Statements**

As noted above, the primary focus of Plaintiff's Motion is on the Dektrix Defendants' failure to produce and preserve their bank statements. The Dektrix Defendant argue that Plaintiff did not request production of any bank statements. (Doc. #206, *PageID* #3085). Indeed, they point out that in earlier drafts of Plaintiff's Requests for Production of Documents, Plaintiff considered requesting "bank statements" specifically, but its final version of the Requests for Production only included a request for "financial records." *Id.* at n. 4 (citing Doc. #201, *PageID* #2794, n.1). Nonetheless, the Dektrix Defendants note that in their September 2021 response to Plaintiff's Requests for Production, the Dektrix Defendants produced emails from Wells Fargo confirming that the bank statements were electronically stored by the bank. *Id.*; *see* Doc. #206-2, *PageID* #s 3097, 3105-09. Thus, they assert, "Having disclosed the existence and custodian of the bank-preserved, electronically stored statements, the Dektrix Defendants discharged any duty they may have had with respect to bank statements." (Doc. #206, *PageID* #3086). Moreover, although

10

the Dektrix Defendants acknowledge that Plaintiff informally requested the statements in its September 5, 2023 letter, "that letter was sent less than 30 days before discovery was scheduled to close—on September 30, 2023." *Id.*

Plaintiff admits to some confusion regarding the original discovery requests but asserts that its request for bank statements was within the scope of Requests 8 and 30. (Doc. #201, *PageID* #2794, n.1). Plaintiff argues, "It was not until the financial records were actually produced – *after* the close of discovery – that Plaintiff learned that bank statements were apparently not included in the financial records that were retained by Defendants." (Doc. #214, *PageID* #4765). Plaintiff contends that even if its May 2021 Requests were not broad enough to encompass bank statements, Plaintiff sent a letter on September 5, 2023, specifically requesting the bank statements, among other items. *Id.*

Plaintiff did not specifically request "bank statements" in either Request 8 or 30. However, Plaintiff did request "financial statements … that show[] the allocation of investor funds and how those funds were used." (Doc. #201-1, *PageID* #2808). While bank statements could fall within the category of "financial statements," Plaintiff failed to utilize an available mechanism to cure the Dektrix Defendant's disclosure violation—a motion to compel. *See Smith v. Midtown Ctr. for Health & Rehab., LLC*, No. 220CV02104TLPATC, 2022 WL 891228, at *2 (W.D. Tenn. Mar. 25, 2022) ("[T]he lack of a motion to compel 'is a pretty significant hole' in Plaintiff's request for sanctions."); *Gambrell*, 2022 WL 17253882, at *5. Further, although Plaintiff could not view the QuickBooks backup file until after the close of discovery (due to the Dektrix Defendants' difficulty ascertaining the password), there is no reason to believe that a QuickBooks backup file would contain bank statements from Wells Fargo or would include bank statements for any of the other Dektrix Defendants. Thus, Plaintiff knew—or should have known—prior to the close of discovery

11

that the Dektrix Defendants did not produce their bank statements.[4] Plaintiff offers no reasonable explanation for its failure to file a timely motion to compel during the discovery phase.

As Plaintiff points out, its counsel did request bank statements in the informal letter sent to the Dektrix Defendants on September 5, 2023. (Doc. #201-3). However, Rule 34 is the formal mechanism by which documents are to be requested. Fed. R. Civ. P. 34; *see McDermott v. Cont'l Airlines, Inc.,* No. 08–3557, 339 F. App'x 552, at *560 (6th Cir. July 30, 2009) (finding no abuse of discretion in denying motion to compel where moving party did not request documents pursuant to Rule 34). As one court explained,

> Of course, informal requests play an important role in the overall discovery process. Counsel exchanging information via email avoids most of the machinations required by the Federal Rules of Civil Procedure. But such requests are just that—requests. While desirable, attorneys are under no rules-based obligation to respond to opposing counsel's informal discovery requests.

*Troutman v. Louisville Metro Dep't of Corr.,* No. 3:16-CV-742-DJH, 2018 WL 3873588, at *4 (W.D. Ky. Aug. 15, 2018). *See Sithon Mar. Co. v. Holiday Mansion*, No. CIV. A. 96-2262-EEO, 1998 WL 182785, at *2 (D. Kan. Apr. 10, 1998) ("Informal requests for production lie outside the boundaries of the discovery rules. . . . Formal requests clearly implicate the duties of opposing parties to respond, pursuant to Fed. R. Civ. P. 34. Letters do not. . . . . To treat correspondence between counsel as formal requests for production under Rule 34 would create confusion and chaos in discovery."). Accordingly, although Plaintiff is correct that it requested Defendant

---

[4] The Dektrix Defendants argue in the alternative that if they had a duty to produce the bank statements, that duty was discharged upon their production of emails from Wells Fargo. (Doc. #206, *PageID* #3086). However, courts in the Sixth Circuit have found that parties are obligated to produce bank statements if that party has the authority to obtain the bank statements. *Margni, Inc. v. Wylie*, No. 09-CV-11931, 2009 WL 10720703, at *4 (E.D. Mich. Dec. 4, 2009) ("[T]o the extent that Defendant has the authority to obtain past bank account statements . . ., Defendant[s] must do so . . . ."); *New London Tobacco Mkt., Inc. v. Ky. Fuel Corp. & James C. Justice Co.*, No. 6:12-CV-91-GFVT-HAI, 2021 U.S. Dist. LEXIS 257617, at *4 (E.D. Ky. Apr. 16, 2021) ("[T]he law of this Circuit requires a party to produce all bank statements it 'has the legal right to obtain' even if the party in fact has no copy.") (citation omitted). Here, the Dektrix Defendants had the authority to obtain their bank statements. Thus, the Dektrix Defendants' production of emails from Wells Fargo would not satisfy a request for production of bank statements.

Dektrix, LLC's bank statements in the September 5, 2023 letter, because Plaintiff failed to either serve a formal request for production of the bank statements or move to compel production of the bank statements, the Dektrix Defendants' failure to produce such statements is not sanctionable.

Assuming *arguendo* that Plaintiff formally requested the bank statements, Plaintiff's Motion for Sanctions nevertheless lacks merit. As noted above, Federal Rule of Civil Procedure 37(e) "governs the burden of proof and available sanctions for failure to preserve electronically stored information." *Palmer v. Allen*, No. 14-cv-12247, 2016 WL 5402961, *1 (E.D. Mich. Sept. 28, 2016). As a threshold matter, Rule 37(e) requires that four predicate elements are met: "(a) the existence of ESI of a type that should have been preserved; (b) ESI is lost; (c) the loss results from a party's failure to take reasonable steps to preserve it; and (d) it cannot be restored or replaced through additional discovery." *Konica Minolta Bus. Sols., U.S.A. Inc v. Lowery Corp.*, No. 15-CV-11254, 2016 WL 4537847, at *2 (E.D. Mich. Aug. 31, 2016).

According to Plaintiff, counsel for the Dektrix Defendants "has stated that bank account statements are no longer available, as the accounts have been closed for too long." (Doc. #201, *PageID* #2798). Plaintiff indicates that counsel for the Dektrix Defendants provided this information after receiving Plaintiff's discovery letter (presumably the one from September 5, 2023). (Doc. #214, *PageID* #4765). Thus, Plaintiff asserts that even if it subpoenaed the records, Wells Fargo does not have them anymore. *Id*. "Regardless, these records were required to be preserved by Defendants upon filing of this case, and Defendants were the only parties who knew which records had been preserved and which had been lost or destroyed." *Id.*

The Dektrix Defendants assert that there is no evidence that the Wells Fargo statements were ever lost or destroyed and, therefore, "[t]he inquiry into spoliation ends with AMP's failure to prove that bank statements were not preserved, were destroyed or were lost.". (Doc. #206,

13

*PageID* #3089).  To the contrary, they point to Wells Fargo's website, which indicates "The length of time Online Statements are available to view . . . 7 years for deposit accounts. . . ."  *Id.* (citing Doc. #206-7, *PageID* #3320).  Thus, according to the Dektrix Defendants, the statements "remained securely stored with Wells Fargo and were available through the close of discovery. (Doc. #206, *PageID* #3089) (citing Exhibit 7).  The Dektrix Defendants do not indicate whether the bank statements are still available from Wells Fargo.

As the Sixth Circuit recently held, "[a]bsent evidence that these records were actually spoiled, spoliation sanctions are inappropriate."  *NLRB v. Bannum, Inc.*, 93 F.4th 973, 983 (6th Cir. 2024).  Here, Plaintiff has not proven that the bank statements have been lost as required by Rule 37(e) in order to issue sanctions.  *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment (Rule 37(e) "applies only when such information is lost.").  Nor has Plaintiff shown that the bank statements cannot be restored or replaced through additional discovery.  Although Plaintiff claims that even if it subpoenaed the statements, Wells Fargo does not have them anymore, (Doc. #214, *PageID* #4765), Plaintiff presents no evidence in support.  *See Katebian v. Missaghi*, No. 18-13379, 2020 WL 1285638, at *7 (E.D. Mich. Mar. 18, 2020) ("Notably, Rule 37(e) only applies if the information *cannot be restored or replaced through additional discovery.*").  There is no indication that Plaintiff attempted to subpoena the bank statements from Wells Fargo at any time before the close of discovery.  Accordingly, Plaintiff's request for sanctions lacks merit because Plaintiff is not able to show that the bank statements are "lost" or that they cannot be restored or replaced through additional discovery.

In light of the above findings, the undersigned concludes that an evidentiary hearing is not necessary.

**IT IS THEREFORE RECOMMENDED THAT:**

Plaintiff's Motion for Sanctions (Doc. #201) be **DENIED**.

November 6, 2024                                          *s/Peter B. Silvain, Jr.*
                                                                                              Peter B. Silvain, Jr.
                                                                                              United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).